UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **EDCV 24-1316-KK-PVCx** | Date: | January 22, 2025 |
|---|---|---|---|
| Title: | *Riverside Healthcare System, LP, d/b/a Riverside Community Hospital v. Service Employees International Union, Local 121 RN* | | |

Present: The Honorable KENLY KIYA KATO, UNITED STATES DISTRICT JUDGE

| Noe Ponce | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Petitioner(s): | Attorney(s) Present for Respondent(s): |
|---|---|
| None Present | None Present |

**Proceedings:** (In Chambers) Order GRANTING Petitioner's Motion to Confirm Arbitration Awards [Dkt. 26]; Order DENYING Respondent's Motion to Vacate or Correct Arbitration Award [Dkt. 27]

## I.
## INTRODUCTION

On June 24, 2024, Petitioner Riverside Healthcare System, LP, doing business as Riverside Community Hospital ("Petitioner") filed a Petition to Confirm Arbitration Award ("Petition") against Respondent Service Employees International Union, Local 121 RN ("Respondent"). EFC Docket No. ("Dkt.") 1, Petition. The Petition seeks to confirm arbitration Opinions and Awards issued on May 19, 2023 and May 31, 2024, pursuant to the terms of the Collective Bargaining Agreement ("CBA") between the parties. Id.

On July 19, 2024, Respondent filed an Answer to Petition. Dkt. 15. On August 6, 2024, Petitioner and Cross-Respondent Riverside Community Hospital filed an Answer to the Answer to Petition. Dkt. 20.

On October 25, 2024, Petitioner filed a Motion to Confirm Arbitration Awards ("Motion to Confirm") pursuant to the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185 et seq. Dkt. 26, Motion to Confirm. On October 25, 2024, Respondent filed a Motion to Vacate or Correct Arbitration Award ("Motion to Vacate") pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 10. Dkt. 27, Motion to Vacate.

On November 22, 2024, Respondent filed an Opposition to the Motion to Confirm. Dkt. 30. On the same day, Petitioner filed an Opposition to the Motion to Vacate. Dkt. 31. On December 6, 2024, Respondent filed a Reply in support of the Motion to Vacate. Dkt. 32. On the same day, Petitioner filed a Reply in support of the Motion to Confirm. Dkt. 33. These matters, thus, stand submitted.

The Court finds these matters appropriate for resolution without oral argument. See Fed. R. Civ. P. 78(b); L.R. 7-15. For the reasons set forth below, Petitioner's Motion to Confirm is **GRANTED**, and Respondent's Motion to Vacate is **DENIED**.

## II.
## RELEVANT BACKGROUND

This case concerns the validity of an arbitration between Petitioner and Respondent. Petitioner operates "an acute care hospital in Riverside, California." Petition ¶ 2. Respondent is a "labor organization" that "represents registered nurses employed by Petitioner." Id. ¶ 3.

Petitioner and Respondent entered into the CBA, effective from September 15, 2017 until September 15, 2020, "that covered a bargaining unit of registered nurses employed by Petitioner at its acute care hospital located in Riverside, California." Id. ¶ 5. The instant action arises out of a CBA dispute as to whether Respondent violated a CBA provision, Article 17, prohibiting Respondent from striking during the life of the CBA. Dkt. 1-1, Ex. A, CBA § 17.1. The CBA included a limited exception to the general no strike provision, specifically "[i]f the Parties are unable to resolve a dispute over the appropriate number of bargaining unit staff that should be assigned to any unit or department in any given circumstances, within thirty (30) days of the panel's request for mediation . . . the no strike/no lockout provision of this [CBA] will not apply during the duration of a strike or lockout over the issue submitted to the mediator." CBA § 25.9.2.

Article 25 of the CBA details a multi-step process that must be satisfied before Respondent may lawfully strike. Dkt. 1-1, Ex. B, Merits Award at 36; CBA §§ 25.6-25.10. First, Respondent must raise the staffing issues at the department level. Id. § 25.6. Second, the issues must be raised before the Staffing Issues Committee. Id. Third, the issues must be raised before a Special Review Panel. Id. § 25.7. Fourth, either party may request mediation with a Federal Mediation and Conciliation Service ("FMCS") mediator. Id. § 25.9.1. If the dispute proceeds to mediation, "the strike/no lockout provision of the [the CBA] will not apply during the duration of a strike or lockout over the issue submitted to the mediator." Id. § 25.9.2. As detailed in the CBA, the failure to comply, completely, with this process renders striking violative of the no-strike provision in Article 17. Id. § 25.10.

In 2019, Respondent raised a staffing issue the parties were unable to resolve through the first three steps of the dispute resolution process. Merits Award at 15. In accordance with the CBA, the parties eventually reached the fourth step of the dispute resolution process and hired an FMCS mediator. Id. at 17. Petitioner and Respondent reached a provisional mediation agreement in May 2019 and, again, in May 2020. Id. at 15, 18.

The parties were nonetheless unable to reach a permanent agreement. Id. at 17-20. Respondent, on June 15, 2020, "provided the FMCS and the [Petitioner] 'Notice of Intent to Strike,' beginning on June 26, 2020, at 7:00 am and ending on July 6, 2020, at 7:00 am." Id. at 21. Prior to

striking, Respondent issued a flyer to its members that stated, with respect to why Respondent considered a strike, "[d]uring the COVID-19 pandemic, hospital safety has only gotten worse and Nurse burnout is at all all-time high. And due to lack of PPE and safe staffing levels, we have an extremely high rate of infected Nurses and other staff members." Merits Award at 20.

On June 22, 2020, Petitioner filed a grievance in accordance with the terms of the CBA "alleging [Respondent] violated Articles 17 and 25 of the CBA." Id. at 22. Petitioner claimed Respondent impermissibly went on strike in violation of the CBA and owed Petitioner resulting monetary damages incurred. Petition ¶¶ 7, 16. The parties "were unable to resolve the grievance." Id. ¶ 8. In accordance with CBA Article 38, on July 29, 2020, "[Petitioner] appealed the grievance to arbitration," and the parties selected Arbitrator Edna E. J. Francis ("Arbitrator") to decide liability, merits, and, if necessary, determine a remedy. Id. ¶¶ 8-9.

Following hearings held on October 12, 2022, November 29, 2022, and November 30, 2022, the Arbitrator issued a written Opinion and Award on May 19, 2023, finding Respondent violated the CBA ("Merits Award"). Id. ¶¶ 10-12. Namely, the Arbitrator found Respondents struck for permissible reasons, related to staffing issues, and impermissible reasons, over safety issues related to COVID-19, which was not allowed under the CBA. Merits Award at 58. Further, the Arbitrator found the pre-strike flyer Respondent issued to its members expanded the purpose of the strike beyond the staffing dispute to include the availability of PPE and other staffing concerns. Merits Award at 36-38. Shortly thereafter, on May 31, 2024, the Arbitrator issued a second written opinion awarding Petitioner damages in the amount of $6,262,192.11 ("Remedy Award"). Petition ¶ 15; Dkt. 1-1, Ex. C, Remedy Award at 32. To date, Respondent "has not arranged payment of or paid [Petitioner] the $6,262,192.11 in damages it owes" pursuant to the Remedy Award. Petition ¶ 16.

### III.
### LEGAL STANDARD

Pursuant to Section 301 of the LMRA, 29 U.S.C. § 185 et seq. ("Section 301"), federal district courts have jurisdiction to review arbitration awards with respect to collective bargaining agreements. Sprewell v. Golden State Warriors, 266 F.3d 979, 986 (9th Cir.), opinion amended on denial of reh'g, 275 F.3d 1187 (9th Cir. 2001); see United Steelworkers of Am. v. Enterprise Wheel & Car Corp., 363 U.S. 593, 96 (1960). However, judicial review of an arbitrator's decision in a labor dispute "is extremely limited." Sprewell, 266 F.3d at 986 (quoting Sheet Metal Workers Int'l Ass'n, Local No. 359 v. Arizona Mechanical & Stainless, Inc., 863 F.2d 647, 653 (9th Cir. 1988)). Federal policy dictates that labor disputes are settled by arbitration and, as such, courts, with limited exception, decline to review the merits of an arbitration award or any remedies formulated by arbitrators. United Steelworkers, 363 U.S. 593 at 596-97 (stating "federal policy of settling labor disputes by arbitration would be undermined if courts had the final say on the merits of the awards").

The foregoing notwithstanding, there are four instances in which "the vacatur of an arbitration award under Section 301 is warranted: (1) when the award does not draw its essence from the collective bargaining agreement; (2) when the arbitrator exceeds the scope of the issues submitted; (3) when the award runs counter to public policy; and (4) when the award is procured by fraud." Sprewell, 266 F.3d at 986, see SFIC Properties, Inc. v. International Ass'n of Machinists & Aerospace Workers, Dist. Lodge 94, 103 F.3d 923, 924-25 (9th Cir. 1996) (holding "[a] reviewing court is bound-under all except the most limited circumstances to defer to the decision of [the

arbitrator], even if . . . that . . . decision finds the facts and states the law erroneously.") (quoting Stead Motors v. Automotive Machinists Lodge No. 1173, 886 F.2d 1200, 1204 (9th Cir. 1989)).

## IV.
## DISCUSSION

In the Motion to Confirm, Petitioner argues (1) the awards draw their essence from the CBA; (2) the arbitrator did not exceed the scope of the issues submitted; and (3) the awards do not conflict with public policy. Motion to Confirm at 5-20. Therefore, Petitioner argues, there is no basis to vacate the Awards issued by the Arbitrator, and the Court should confirm the Awards and enter judgment against Respondent in the amount of $6,262,192.11. Id. at 21. In the Motion to Vacate, Respondent argues (1) the awards do not draw their essence from the CBA; (2) the Arbitrator exceeded the scope of her authority because (i) she impermissibly added to the CBA and (ii) she lacked jurisdiction to hear the matter; and (3) the awards conflict with three public policies. Motion to Vacate at 7-24. Therefore, Respondent argues the Arbitrator's awards should be vacated. Id. at 25. As discussed below, the Court finds no basis to vacate the arbitration awards.[1]

### A.   THE ARBITRAL AWARDS DRAW THEIR ESSENCE FROM THE CBA

#### 1.   Applicable Law

An arbitral award will be deemed to draw its essence from the collective bargaining agreement when "it is based on language in the CBA." SPIC, 103 F.3d at 925; see Jasper Cabinet Co. v. United Steelworkers of America, AFL-CIO-CLC, Upholstery and Allied Division, 77 F.3d 1025, 1028 (7th Cir. 1996) (holding courts will uphold arbitral awards, including those based upon a "misreading of the contract," if the "interpretation is derived from the language of the contract"). Arbitration awards need only to represent a "plausible interpretation of the contract" to be upheld. Phoenix Newspapers, Inc. v. Phoenix Mailers Union Local 752, 989 F.2d 1077, 1080 (9th Cir. 1993).

#### 2.   Analysis

Here, the Arbitrator issued two written opinions: (1) the Merits Award and (2) the Remedy Award. Petition ¶¶ 11, 14. The 58-page Merits Award is a comprehensive record of the procedural and substantive elements of the dispute and provides the parties with reasoned factual findings and conclusions of law on the merits of the underlying dispute. Merits Award at 47-58. Similarly, the 32-page Remedy Award provides specific references to the CBA, governing law, and other evidence underlying the Arbitrator's remedy determination. Remedy Award at 22-38. Both awards are based on the language of the CBA and, as such, draw their essence from the CBA. SPIC, 103 F.3d at 923. As such, the Court finds no basis to conclude the awards are not based on the language in the CBA. Sprewell, 266 F.3d at 986, see also United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 38 (1987) (holding "as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority," courts should not disturb the decisions of arbitrators).

---

[1] Pursuant to Section 301, it is well established that arbitration awards "procured by fraud" warrant vacatur by federal courts. Sprewell, 266 F.3d at 986. Here, neither Petitioner nor Respondent allege the Awards were procured by fraud. Therefore, this element is omitted from the Court's analysis.

B.   **THE ARBITRATOR DID NOT EXCEED THE SCOPE OF ISSUES SUBMITTED**

   1.   **Applicable Law**

An arbitrator's jurisdction extends to all issues submitted for review. Schoenduve Corp. v. Lucent Technologies, 442 F.3d 727, 733 (9th Cir. 2006) ("The scope of the arbitrator's jurisdiction extends to issues not only explicitly raised by the parties, but all issues implicit within the submission agreement."). Further, arbitrators are provided with "substantial latitude in fashioning a remedy under a CBA." Sprewell, 266 F.3d 979 at 987; see United Steelworkers of Am. v. Enter. Wheel & Car Corp., 363 U.S. 593, 598 (1960) (holding "[a] mere ambiguity in the opinion accompanying an award, which permits the inference that the arbitrator may have exceeded his authority, is not a reason for refusing to enforce the award," as "[a]rbitrators have no obligation to . . . give their reasons for an award"). Further, an arbitrator's jurisdiction extends to all issues submitted for review. Schoenduve Corp. v. Lucent Technologies, 442 F.3d 727, 733 (9th Cir. 2006) ("The scope of the arbitrator's jurisdiction extends to issues not only explicitly raised by the parties, but all issues implicit within the submission agreement.").

   2.   **Analysis**

Here, each party identified the specific issues for which they sought arbitral review. Merits Award at 4. Petitioner requested review of "whether [Respondent] violated the [CBA] and the mediation agreement by striking for reasons not permitted by the collective bargaining agreement and by disclosing mediation conference communication." Id. Respondent requested review of both the arbitrability of the grievance and, if the grievance is arbitrable, "whether [Respondent] violated the CBA in calling a strike in June and July 2020." Id. The Arbitrator's analysis and findings did not go beyond these issues. See Mertis Award. Therefore, given these facts, the Arbitrator did not exceed the scope of the issues submitted when determining the awards. See United Steelworkers of Am. v. Enter. Wheel & Car Corp., 363 U.S. 593, 598 (1960) (holding arbitrators are under no obligation to provide justification for their awards).

C.   **THE AWARDS DO NOT VIOLATE PUBLIC POLICY**

   1.   **Applicable Law**

To find an arbitration award in violation of a public policy, a court "must (1) find that an explicit, well defined and dominant public policy exists here and (2) that the policy is one that specifically militates against the relief ordered by the arbitrator." United Food & Commercial Workers Int'l Union, Local 588 v. Foster Poultry Farms, 74 F.3d 169, 174 (9th Cir. 1995) (internal quotation marks omitted). Vacatur of an arbitral order on public policy grounds requires a party to make specific "reference to the laws and legal precedents" and cannot be based on "general considerations of supposed public interests." E. Associated Coal Corp. v. United Min Workers of Am., Dist. 17, 531 U.S. 57, 62 (2000) (internal quotation marks omitted). Further, parties to arbitration proceedings have an obligation to assert any objections before a decision is issued. United Steelworkers of America, AFL-CIO-CLC v. Smoke-Craft, Inc., 652 F.2d 1356, 1360 (9th Cir. 1981) (holding "[p]arties to arbitration proceedings cannot sit idle while an arbitration decision is rendered and then, if the decision is adverse, seek to attack the award collaterally on grounds not

raised before the arbitrator"). If a party fails to raise certain arguments during the arbitration proceeding, it waives its right to raise those arguments in the future. Id.

### 2. Analysis

Here, the awards do not violate public policy. Respondent has maintained that the labor strike was solely "over [Petitioner's] failure to provide appropriate staffing levels," as permitted by the CBA, and any discussion of "PPE, COVID-19, or other abnormally dangerous conditions . . . did not convert the staffing strike into a non-staffing strike." Dkt. 27-1 at 7-8. The Arbitrator rejected Respondent's position, finding the strike was for both permissible (staffing) and impermissible (PPE and COVID-19) reasons under the CBA. Merits Award at 58; Remedy Award at 31-32. Respondent's Motion to Vacate is ground, in part, on the awards supposed conflict with standing public policy: (1) § 502 of the Taft-Hartley Act; (2) California Labor Code Section 6311; and (3) § 301 of the LMRA. Dkt. 27-1 at 7-20. None of these arguments were asserted during the arbitration, hence, this Court will not consider them at this stage. Merits Award at 39-47; see McClatchy Newspapers v. Central Valley Typographical Union No. 46, 686 F.2d 731, 733-34 (9th Cir. 1982) (holding arbitrators exhaust their right to review disputes after they issue a final award); see also United Steelworkers, 74 F.3d 169 at 174. Further, Respondent failed to meet its obligation to identify the specific laws underlying their claims during the arbitration proceeding. E. Associated Coal Corp., 531 U.S. at 62.

Thus, the awards do not violate public policy.

Accordingly, because the arbitration awards draw their essences from the CBA, the Arbitrator did not exceed the scope of issues submitted, and the awards do not violate public policy, Petitioner's Motion to Confirm is **GRANTED**, and Respondent's Motion to Vacate is **DENIED**.

### D. PETITIONER'S REQUEST FOR ATTORNEYS' FEES IS DENIED

### 1. Applicable Law

Under prevailing law, in a federal action, attorneys' fees cannot be recovered by the successful party in absence of statutory authority for the award. Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, 421 U.S. 240, 245 (1975) ("[T]he general 'American rule' [is] that the prevailing party may not recover attorneys' fees as costs or otherwise). Section 301 does not expressly provide for the recovery of attorneys' fees and cost in actions to confirm labor arbitration awards. 29 U.S.C. § 185. Similarly, the FAA does not provide for recovery of attorneys' fees to the party who is successful in seeking confirmation of arbitral awards in federal courts. 9 U.S.C. § 1 et seq. However, a court, in its discretion and pursuant to its equitable powers, "may award counsel fees to a successful party when his opponent has acted 'in bad faith, vexatiously, wantonly, or for oppressive reasons.'" Hall v. Cole, 412 U.S. 1, 5 (1973) (quoting 6 J. Moore, Federal Practice 54.77(2), p. 1709 (2d ed. 1972)).

### 2. Analysis

Here, the Court finds that there is no basis for attorneys' fees as counsel for Respondent did not act in bad faith, vexatiously, wantonly, or for oppressive reasons in opposing the confirmation

of the Awards. Thus, the Court declines to exercise its discretion to award attorneys' fees. Accordingly, Petitioner's Motion for Attorneys' Fees is **DENIED**.

## V.
## CONCLUSION

For the reasons set forth above, the Court hereby **GRANTS** Petitioner's Motion to Confirm Arbitration Award, and orders as follows:

1. The Opinions & Awards of Arbitrator Francis in the bifurcated Arbitration, dated May 19, 2023 ("Merits Award") and May 31, 2024 ("Remedy Award") are CONFIRMED;
2. JUDGMENT is entered against Service Employees International Union, Local 121 RN in the amount of $6,262,192.11;
3. Respondent's Motion to Vacate or Correct Arbitration Award is **DENIED**.

**IT IS SO ORDERED.**